DISTRICT OF OREGON, ss: AFFIDAVIT OF LAURA LUPPENS

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Laura Luppens, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since 2017. I am currently assigned to the FBI's Bend Resident Agency. My current assignment includes investigating crimes on the Warm Springs Indian Reservation. I have acquired knowledge and experience in conducting criminal investigations from formal and informal training, learning from other law enforcement officers, and my participation in investigations. As a federal law enforcement officer, I am authorized to investigate and make arrests for violations of federal law and to apply for federal search warrants.

2. I submit this affidavit in support of a criminal complaint and arrest warrant for Romaine Miller Jr. for the crime of Assault by Strangulation, in violation of Title 18, United States Code (U.S.C.) § 113(a)(8). As set forth below, there is probable cause to believe, and I do believe, that Romaine Miller Jr. committed Assault by Strangulation, in violation of Title 18 U.S.C. § 113(a)(8).

**Applicable Law**

3. Title 18 U.S.C. § 113(a)(8), "Assault by Strangulation," provides, in relevant part, that "Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault by strangling or attempting to strangle or suffocate shall be imprisoned for not more than 10 years."

4. Jurisdiction for this crime in Indian Country is governed by 18 U.S.C. § 1153 – the Major Crimes Act. The Confederated Tribes of the Warm Springs (CTWS) Indian

Reservation is Indian Country within the special maritime and territorial jurisdiction of the United States as defined by 18 U.S.C. § 1151. Here, there is federal jurisdiction because the crimes occurred in Indian Country, were committed by an enrolled member of the Confederated Tribes of the Warm Springs Reservation and were committed against an enrolled member of the Confederated Tribes of the Warm Springs Reservation, namely Adult Victim 1 (AV1).

**Statement of Probable Cause**

5. On or about August 7, 2026, Warm Springs Police Department (WSPD) officers were dispatched to a residence within the exterior boundaries of the Warm Springs Indian Reservation. The reporting party (RP) who called for police told WSPD dispatch that Romaine Miller Jr. (hereinafter "Miller") had beaten his girlfriend and that the girlfriend did not feel safe entering her residence because she was unsure if Miller was still at the residence.

6. Upon arrival, officers made contact with RP and AV1 and identified AV1 as Miller's girlfriend. RP and AV1 were seated inside a vehicle parked near the residence. I have reviewed body-worn camera footage of the interaction between WSPD officers and AV1. W hen asked about the assault[1], AV1 said "look at my face, look at my body," and gestured to multiple visible bruises, scratches and abrasions on her head, neck and arms. AV1 said that Miller "tried to kill me" and that the assault happened the previous day. AV1 said "he choked the shit out of me and said 'Fuck you bitch, I'm going to kill you.'" AV1 said that she got the scrapes on her knees and arms and the abrasion on her face from stumbling around and falling when she was

[1] I know from my training and experience that lay people often conflate the terms "choking" and "strangulation." Choking refers to an obstruction in the throat that is internal. Strangulation refers to an external pressure to the neck. I believe based on what AV1 reported that she is describing being strangled based on the mechanism described. I therefore will use the term "strangled" throughout this affidavit to describe what she reported.

drunk, but that all of the bruises were from Miller. AV1 stepped out of the vehicle so that a WSPD officer could take photographs of her injuries. While showing the officer her injuries, AV1 said that Miller "tried to fucking choke me out." The body-worn camera footage and photos taken by WSPD show visible bruising to AV1's arms, injuries to AV1's neck, as well as bruising, swelling, and abrasions to AV1's face.

7. WSPD officers knocked on the door to the residence to determine if Miller was inside. After knocking on the front door and receiving no response, the Officers obtained AV1's permission to enter the residence to see if anyone was inside. Officers did not locate anyone inside the residence.

8. AV1 agreed to follow the Officers to the Warm Springs Police Department to complete some forms regarding the reported strangulation. While at the police department, Warm Springs Fire & Safety (WSFS) personnel evaluated AV1. AV1 answered additional questions about the assault and strangulation as the WSPD officer completed a strangulation event questionnaire. In response to questions, AV1 stated that Miller strangled her with both hands[2]; that he was hitting her with his fists as well; that she lost consciousness while he was strangling her; that she had difficulty breathing while he was strangling her and afterward; that he was angry while he was strangling her; that he said "I'm going to kill you" while he was strangling her; and that she used both of her hands to punch Miller to attempt to get him to stop. When Miller strangled her, AV1 thought she was going to die.

9. AV1 was transported to St. Charles Madras where she consented to a medical-forensic evaluation and treatment related to non-fatal strangulation. A nurse specialized in such

---

[2] It is unclear to me if AV1 meant that Miller used both hands at the same time, both his left and right hands individually at different times, or all of the above.

assessments completed a Strangulation Kit (SKIT) that WSPD collected as evidence. Section I of the report completed by the nurse examiner, "Report of Incident," states that AV1 said Miller strangled her twice and "The second time he choked me I blacked out. I felt weak but I handled it. Then I ran out the door and escaped." Section IV, "Information Pertaining to Assault," states that AV1 consumed alcohol prior to the assault. Section VII, "Strangulation/Suffocation Assessment" says that AV1 had difficulty breathing during the assault and said "I wasn't able to breathe, I almost blacked out." This same Section VII says that AV1 denied any loss of consciousness during the assault. In the report, the examining nurse thoroughly described bruising, swelling, abrasions, and other injuries to AV1's face, head, neck, shoulders, arms, hands, and other parts of her body.

10. On August 10, 2026, WSPD Detective Sergeant Timothy King and I interviewed Miller at the Jefferson County Jail where Miller was in custody after being arrested by WSPD on or about August 8, 2026, on tribal charges related to the assault and battery of AV1. Detective King used his body-worn camera to record the interview. Detective King provided Miller with his *Miranda* warnings from a prepared card. Miller affirmed that he understood his rights and began speaking with us.

11. Miller said that he had been in a relationship with AV1 for more than eleven years. Miller said he had an altercation with AV1 at the trailer where they lived together on Thursday (in reference to August 6, 2026) after he got home from work. Miller worked from 7:00 a.m. until 3:30 p.m., so the altercation occurred sometime after 3:30 p.m. When Miller got home to the trailer, AV1 was drunk and was laying down. Miller denied drinking after work. They were in the front room of the trailer, which is the living room. Miller saw a hickey on AV1's neck and confronted her about where she got it. Miller said that AV1 was trying to hide

the hickey from him, so he grabbed her by the neck so that he could see the hickey and then pushed her away. Miller said that he grabbed AV1 by the neck and jerked it a little bit so he could see the hickey. Miller said AV1 acted scared after he grabbed her by the neck. Miller said that AV1 initially said the hickey was from him but ultimately admitted it was from someone else. Miller said that this made him "pretty upset". When asked about how AV1 could have received her injuries, Miller said "I might have bruised her by grabbing her." Miller said that when he gets "real angry like that sometimes I just can't remember." Miller said that he "may have grabbed her and shook her or something." When asked how many times Miller tried to grab AV1, he replied, "Just a couple, just trying to grab her so I could see it" and lifted both hands in front of his body. When asked if he used both hands, Miller nodded his head affirmatively. Miller then said, "I wasn't trying to choke her or anything I was just trying to look at it."

12. At multiple times during the interview, Miller demonstrated how he grabbed AV1 by the neck by raising either his left hand or his right hand in front of him and gesturing as if he were grabbing someone by the neck with one hand. Miller also demonstrated what he did to AV1 by grabbing his own neck with one hand.

13. At several points during the interview, Miller said that he grabbed AV1 during the altercation and demonstrated this by holding both of his hands in front of him as if using both hands to grab someone by both of their arms.

14. When he was shown a photograph of AV1's neck, Miller agreed that a bruise on AV1's neck could be from his thumb when he grabbed her neck with his right hand.

15. Approximately 31 minutes into the interview, Miller said he was done answering questions and the interview was terminated.

## Conclusion

16. Based on the foregoing, I have probable cause to believe, and I do believe, that Miller committed Assault by Strangulation, in violation of Title 18 U.S.C. § 113(a)(8). I therefore request that the Court issue a criminal complaint and arrest warrant for Romaine Miller Jr.

17. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Arin Heinz, and AUSA Heinz advised me that in her opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed. R. Crim. P. 4.1*
Laura Luppens
Special Agent, FBI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 3:30 ~~a.m.~~/p.m. on August 11, 2026.

Jolie A. Russo
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge